IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF NEW MEXICO

GERALDINE WILLIAMS,

      Plaintiff,

v.                              No. 12-CV-716 MCA/LAM

MALCOLM CURTIS and
EL PASO NATURAL GAS CO., INC.

      Defendants.

**MEMORANDUM OPINION AND ORDER**

**THIS MATTER** is before the Court on Defendant El Paso Natural Gas Co., Inc.'s (hereinafter EPNG) *Motion and Memorandum for Summary Judgment on Plaintiff's Personal Injury Claims* [Doc. 148], which Mr. Curtis joins. [Doc. 166] Having considered the parties' submissions, the relevant law, and otherwise being fully advised in the premises, the Court **DENIES** the Motion.

## I.    BACKGROUND

This case involves an automobile collision on May 26, 2011. Prior to the May 26, 2011 collision, Plaintiff had a history of back pain and had sought treatment for her back pain. Plaintiff sought treatment from the Gallup Indian Medical Center and Goforth Chiropractic for neck and lower back pain from July, 2009 to May 7, 2010. [Doc. 148, ¶¶ 4, 5; Doc. 148-3, pp. 1-11] Plaintiff had a physical therapy evaluation in June of 2010 for lower back pain, right leg pain, possible radiculopathy, and spinal stenosis. [Doc. 148-3, p. 13] Plaintiff also sought treatment on April 29, 2011 for "intermittent pain in

1

both wrists," at which time the rheumatologist noted in her present history that Plaintiff "complains of low back pain and neck pain."  [Doc. 148-4, p. 1]

On May 26, 2011 Defendant Malcolm Curtis rear-ended Plaintiff.  [Doc. 148, ¶ 1] Mr. Curtis was an employee of EPNG and was driving an EPNG vehicle at the time of the collision.  [Doc. 148, ¶ 2; Doc. 150, p. 1]  Plaintiff submits that she suffered "immediate, distinct and separate pain" from the May 26, 2011 collision.  [Doc. 171, ¶ 4] Plaintiff describes this pain as "an intense burning sensation, pain, sharp pains that shoot through her back and burning sensations that run up and down her legs, and vibrations in her left leg and hip pain."  [Doc. 171, ¶ 5]

On June 10, 2011, Plaintiff visited again with the rheumatologist, who noted "no significant changes" since Plaintiff's visit prior to the May 26, 2011 visit.  [Doc. 148-5, p. 1]  In this note, the rheumatologist states that Plaintiff "was recently given Flexeril for low back pain and she takes this at bedtime occasionally."  [Doc. 148-5, p. 1]  He also notes that plaintiff is "in no distress;" that Plaintiff "[m]oves easily about the room and on off the exam table without assistance;" "[b]ilateral hips and knees exhibited full range of motion without pain;" and "[n]o tenderness to fist percussion in the midline of the lumbosacral spine."  [Doc. 148-5, p. 2]  The rheumatologist also states as one of his impressions that Plaintiff has "[l]ow back pain, most likely discogenic" and states in his "Plan and Recommendations" that Plaintiff should "[c]ontinue Flexeril as needed for back spasm" and that he "gave the patient a self-directed home exercise program for lower back pain.  She should perform these daily if possible."  [Doc. 148-5, p. 2]

On June 21, 2011, the hydraulic mechanism on a chair on which Plaintiff sat collapsed, causing the chair to suddenly go from a high to a low position.[1]  [Doc. 171, p. 28, 128:23 to 129:19]  The next day Plaintiff went to the emergency room complaining of low back pain and migraine and was diagnosed with low back strain and contusion. [Doc. 148-6, pp. 1-2]

Subsequently, Plaintiff fell on January 16, 2013, and reported another lower back injury from that fall, as well as reported another lower back injury when she bent over and heard a pop on May 21, 2013.  [Doc. 148, ¶¶ 8, 9]

In none of Plaintiff's medical records (at least, in none of those submitted to the Court) do the medical providers causally relate Plaintiff's complaints of pain to the May 26, 2011 collision.  [Doc. 148, ¶ 12]  Rather than retaining a medical expert, Plaintiff intends to establish the causal relationship between the May 26, 2011 collision and her damages through her own testimony that she is able to identify which pain she suffered as a result of which incident.  [Doc. 171, pp. 3-4]  Plaintiff will testify that she "attribute[s] the greater portion of the source of [her] back pain, suffering, debility and motivation for medical and surgical treatment" to the May 26, 2011 collision.  [Doc. 171, p. 5 ¶ 4] Plaintiff testified that she had recovered from her previous back injury and that, from the May 26, 2011 collision:

> The pain was different.  It was more muscle spasms that experienced a lot of pain with this accident with El Paso rear-ending me.  It's not muscle spasm.  It's pain, an intense burning sensation, pain, sharp pains that shoot

---

[1] In this lawsuit, Plaintiff also sued the manufacturer of the chair, and has since settled with the manufacturer.  [Doc. 8-2; Doc. 68; Doc. 69]

through my back, a burning sensation that runs up and down my legs, vibrations in my left leg, pains in my hip.

[Doc. 171, p. 26, 102:5-11]  Plaintiff further testified:

When I got rear-ended, the pain started and it started to increase when the chair incident happened.  Because my back was already hurting from the rear-end incident and then when the chair incident happened, so I can't really tell which is more painful [the chair incident or the May 26, 2011 collision] because I was already hurting.

[Doc. 171, p. 27, 127:12-21]

EPNG has retained a medical expert who is prepared to testify, among other things, that "Plaintiff did not sustain injury as a consequence of the minor motor vehicle collision of 5/26/11;" that the 5/26/11 collision did not aggravate any pre-existing medical condition; and that only Plaintiff's Emergency Department visit on 5/26/11 is related to the collision in issue.  [Doc. 148-10, pp. 2-3]

## II.    ANALYSIS

A party may move for summary judgment, identifying each claim or defense--or the part of each claim or defense--on which summary judgment is sought.  The court shall grant summary judgment if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law.

Fed. R. Civ. P. 56(a).  "A fact is material if, under the governing law, it could have an effect on the outcome of the lawsuit.  A dispute over a material fact is genuine if a rational jury could find in favor of the nonmoving party on the evidence presented." *Adamson v. Multi Cmty Diversified Servs., Inc.*, 514 F.3d 1136, 1145 (10th Cir. 2008). "The factual record and reasonable inferences therefrom are viewed in the light most favorable to the party opposing summary judgment." *Byers v. City of Albuquerque*, 150

F.3d 1271, 1274 (10th Cir. 1998).   It is not the Court's "province at the summary

judgment stage to weigh the evidence or make credibility determinations."   *Sanders v.*

*Sw. Bell Tel., L.P.*, 544 F.3d 1101, 1105-06 (10th Cir. 2008).

> If the movant bears the burden of persuasion at trial on the issue contested
> in the summary judgment motion, the movant may not meet its initial
> burden by pointing to the nonmovant's lack of evidence on a contested
> issue. . . . When the movant bears the burden of persuasion at trial, the
> movant must produce evidence that would conclusively support its right to
> a judgment after trial should the nonmovant fail to rebut the evidence.   In
> other words, the evidence in the movant's favor must be so powerful that
> no reasonable jury would be free to disbelieve it.   Anything less should
> result in denial of summary judgment.

11 *Moore's Federal Practice* § 56.40[1][c] (3d ed. 2013).

Plaintiff has not named an expert witness to testify as to the cause of her injuries.

As a result, Defendants argue, Plaintiff cannot submit sufficient evidence that the

collision caused her injury to survive summary judgment.   Defendants argue:

> In New Mexico, proximate cause is generally expressed by an expert
> witness.   Unless negligence can be shown by facts which can be evaluated
> by resort to common knowledge, expert testimony is needed to assist the
> jury in deciding whether an act proximately caused injury.   Only a medical
> expert can ascertain whether Plaintiff's injuries were caused by the accident
> because the average juror would not know the medical terminology
> involved in such an opinion.

[Doc. 148, pp. 6-7 (internal citations omitted)].

As an initial matter, the Court believes it is necessary to consider Plaintiff's

claimed damages during various time periods:  1) the day of the collision; 2) the weeks

between the collision and the chair incident; 3) after the chair incident and prior to

Plaintiff's subsequent traumas to her back; and 4) after each subsequent trauma to her

back.   It is also necessary to consider that there are various types of damages, and pain

and suffering is different from medical bills and treatment.   Defendants have not separately analyzed the time periods of injury or the types of damages, but maintain that Plaintiff cannot establish that the collision caused her any damages.   Defendants' position is not supported by New Mexico law.   There is no case law in New Mexico establishing a bright line rule requiring a medical expert to testify as to causation in personal injury cases.   Rather, New Mexico states the requirement for expert testimony as follows: "where the subject matter is wholly scientific or so far removed from the usual and ordinary experience of the average man that expert knowledge is essential to the formation of an intelligent opinion, only an expert can competently give opinion evidence as to the cause of death, disease, or a physical condition."   *Woods v. Brumlop*, 377 P.2d 520, 522 (N.M. 1962) (internal quotation marks and citation omitted); c.*f. Morris v. Rogers*, 456 P.2d 863, 865 (N.M. 1969) (declining to reach the issue of "the type of evidence [medical or non-medical] required to show a permanent injury" in motor vehicle accident case); *Martin v. Darwin*, 420 P.2d 782, 784 (N.M. 1966) (declining to reach the question of whether expert testimony is necessary to causally connect a nervous condition to a motor vehicle accident); *Alvillar v. Hatfield*, 484 P.2d 1275, 1277 (N.M. Ct. App. 1971) (assuming without deciding that cause of medical condition at time of trial must be established by medical testimony in motor vehicle accident case); *Duke v. Garcia*, 2014 WL 1333151, *1-2 (D.N.M. 2014) (recognizing that, while in many cases expert testimony is necessary to establish medical causation, "such expert testimony is not always necessary" in New Mexico, particularly in cases within the common experience or knowledge of the layman (internal quotation marks, citations and brackets omitted));

6

*see also* Danny R. Veilleux, Annotation, *Necessity of Expert Testimony on Issue of Permanence of Injury and Future Pain and Suffering*, 20 A.L.R.5th 1 (1994) (collecting cases; listing jurisdictions which consider whether an injury is subjective or objective; listing other jurisdictions which consider the nature, extent and duration of the injury in determining whether expert testimony is necessary to establish permanent injury and future pain and suffering).

The cases Defendants cite generally involve medical malpractice, and these cases neither establish a bright line rule nor control this case involving a motor vehicle accident.  *See, e.g.*, *Lopez v. Sw. Cmty. Health Servs.,* 833 P.2d 1183, 1888 (N.M. Ct. App. 1992) ("In a medical malpractice case, because of the technical and specialized subject matter, expert medical testimony is usually required to establish departure from recognized standards in the community."); *Alberts v. Schultz*, 975 P.2d 1279, 1288 (N.M. 1999) (analyzing whether expert testimony in loss of chance medical malpractice claim established causation to a "reasonable medical probability"); *Baer v. Regents of the University of California*, 972 P.2d 9, 15 (N.M. Ct. App. 1972) (stating that expert testimony may be used to establish proximate cause in cases of medical negligence "when the trial court reasonably decides that it is necessary to properly inform the jurors"); *Mascarenas v. Gonzales*, 497 P.2d 751, 753 (N.M. Ct. App. 1972) (stating that, while expert testimony is generally required to establish medical negligence and damages, expert testimony is not required where the facts "can be evaluated by resort to common knowledge").

Notwithstanding the above, in conducting its own review, the Court found New Mexico cases holding that "[e]vidence as to future medical treatment must be to a medical probability." *Cummings v. Nielson's, Inc.*, 769 P.2d 732, 739 (N.M. Ct. App. 1988); *see also Michael v. West*, 412 P.2d 549, 551 (N.M. 1966) (holding the Plaintiff failed to establish "even by a medical opinion, that such a future operation will be required as a medical probability").  As such, Plaintiff will not be able to seek damages for future medical treatment because she has not named an expert to testify that because of the collision she will need such treatment to a reasonable medical probability. Defendants, however, seek summary judgment as to Plaintiff's entire claim for personal injury.  Because Plaintiff has proffered her own testimony as to her pain and suffering and how she relates such pain and suffering to the collision, Defendants are not entitled to judgment as a matter of law.[2]  If Plaintiff's testimony is believed by the jury, Plaintiff may be able to establish causation for some of her claimed damages, for example, damages the day of the collision.  This alone defeats Defendants' motion for summary judgment.

Further, as in cases involving successive tortfeasors liability,[3] once Plaintiff has established that the collision caused her injury, the burden is on the Defendants to establish the degree of enhancement of the injury by the subsequent incidents.  *See Lewis*

---

[2] In addition, the fact that EPNG has proffered an expert on causation while Plaintiff has not does not entitle Defendants to summary judgment because the jury may decide to give EPNG's expert's testimony little or no weight on the issue of causation.  *See* U.J.I. 13-213 NMRA.

[3] As the parties have not briefed the issue, the Court does not decide whether this line of cases apply to the case at hand.

*ex rel. v. Samson*, 35 P.3d 972, 985 (N.M. 2001) (in case involving foreseeable medical negligence after stabbing, holding that it is the burden of the party seeking to establish injury by the subsequent tortfeasors (whether that party is the injured party or the original tortfeasors) to establish:  "(1) that the successive tortfeasor's negligence resulted in injuries separate from and in addition to the injuries which otherwise would have been caused by the initial tort, and (2) the degree of enhancement caused by the medical treatment by introducing evidence of the injuries that would have occurred absent the physician's negligence."); *see also Payne v. Hall*, 137 P.3d 599, 605 (2006) (addressing successive tortfeasor liability); *Lujan v. Healthsouth Rehab. Corp.*, 902 P.2d 1025, 1030 (1995) (same).  Accordingly, it is not Plaintiff's burden to establish that any subsequent (or prior) incidents did not cause her injury.  11 *Moore's Federal Practice* § 56.40[1][c].  It is only Plaintiff's burden to establish that Mr. Curtis negligently collided with her causing her injury.

Finally, because the Court holds that Plaintiff's testimony is sufficient to create a fact issue as to causation, it is not necessary for the Court to address Defendants' second argument that Plaintiff "has disclosed no causation evidence that would meet the *Daubert/Alberico* standard."  [Doc. 148, p. 7]

## III.   CONCLUSION

For the foregoing reasons, the Court concludes that Defendants are not entitled to summary judgment.

**IT IS THEREFORE HEREBY ORDERED** that Defendant EPNG's *Motion and Memorandum for Summary Judgment on Plaintiff's Personal Injury Claims* [Doc. 148] is **DENIED**.

**IT IS SO ORDERED THIS** 20th day of August, 2014, in Albuquerque, New Mexico.

_____
M. CHRISTINA ARMIJO
Chief Judge, United States District Court